### Troy E. HOWARD, Appellant–Defendant,

v.

### STATE of Indiana, Appellee–Plaintiff.

No. 79A02–0403–CR–238.

Court of Appeals of Indiana.

Nov. 23, 2004.

Transfer Denied Feb. 3, 2005.

470

Gregg S. Theobald, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Troy Howard ("Howard") was convicted of Class A felony dealing in methamphetamine,[1] Class C felony dealing in a Schedule IV controlled substance,[2] Class D felony operating a vehicle while an habitual traffic violator,[3] Class B misdemeanor false informing,[4] and found to be an habitual substance offender[5] in Tippecanoe Superior Court.

Howard appeals, raising the following consolidated and restated issues for review:

I. Whether the trial court abused its discretion when it admitted evidence obtained as a result of Howard's search and seizure;

II. Whether the trial court was required to ask jurors whether they had questions before excusing each witness; and,

III. Whether Howard received an improper double enhancement.

---

1. Ind.Code § 35–48–4–1(b)(1) (1998).

2. Ind.Code § 35–48–4–3(a) (1998).

3. Ind.Code § 9–30–10–16(a) (1998).

4. Ind.Code § 35–44–2–2(c)(1) (1998).

5. Ind.Code § 35–50–2–10 (1998).

Concluding the trial court did not abuse its discretion, the trial court was not required to ask jurors whether they had questions, and Howard did not receive an improper double enhancement, we affirm.

## Facts and Procedural History

On May 28, 2002, various law enforcement agencies were conducting a seat belt enforcement zone near the intersection of Main and Kossuth Streets in Lafayette. Tippecanoe County Sheriff's Deputy Richard Walker ("Deputy Walker") was stationed at the east end of this enforcement zone and was responsible for alerting officers at the west end of the enforcement zone to drivers who were not wearing seat belts. The officers at the west end would then direct the driver of the vehicle in question to pull over and issue a citation.[6]

At 12:45 p.m., Deputy Walker observed Howard driving a BMW without the use of his seat belt. Deputy Walker radioed his observation to Lafayette Police Department Patrolman Ronald Dombkowski ("Officer Dombkowski"). Officer Dombkowski then noticed the BMW approaching and Howard attempting to fasten his seat belt. Officer Dombkowski then directed Howard to pull over in a nearby parking lot.

When Officer Dombkowski approached Howard's vehicle, he asked Howard for his license and registration. Howard gave Officer Dombkowski a registration form, stated he neither had his wallet nor identification on him, identified himself as "Todd D. Howard," and stated he did not know his social security number. Tr. p. 127. Finally, when Officer Dombkowski asked

---

6. Vehicles were not randomly stopped to check for seat belt compliance in this enforcement zone; only motorists who were observed driving without their seat belt were stopped. Tr. p. 125.

Howard for his date of birth, Howard paused for several seconds and said, "10, no wait. 11–10–66." [7] Tr. p. 129.

Officer Dombkowski then noticed Howard had a knife hooked to his pants pocket and asked Howard to step from his vehicle so he could remove the knife. When Howard stepped from his vehicle, Officer Dombkowski noticed the outline of a wallet in Howard's back pocket and obtained Howard's wallet, which contained an identification card with Howard's picture, correct name, and correct date of birth on it.

Officer Dombkowski placed Howard under arrest for false informing and performed a check on Howard's identifying information. This check revealed that Howard's driver's license was suspended because of Howard's habitual traffic violator status. Officer Dombkowski also discovered that the license plate on the BMW was registered to a different car in a different person's name. Furthermore, a check of the BMW's vehicle identification number indicated Howard did not own the vehicle.

After arresting Howard and despite Howard's pleas to have a friend drive the BMW home, Officer Dombkowski impounded and performed an inventory search of the BMW. This search revealed six baggies containing 6.23 grams of methamphetamine, one empty baggie with residue, and ninety-four Valium pills.

On May 29, 2002, Howard was charged with Class A felony dealing in methamphetamine, Class A felony possession of methamphetamine, Class C felony dealing in a Schedule IV controlled substance, Class C felony possession of a Schedule IV controlled substance, Class D felony operating a vehicle while an habitual traffic violator, Class B misdemeanor false informing, and alleged to be an habitual substance offender.

On November 12, 2003, Howard filed a motion to suppress, alleging (1) the seat belt enforcement zone in which he was pulled over did not meet the requirements of *State v. Gerschoffer*, 763 N.E.2d 960 (Ind.2002), and (2) the inventory search of his vehicle was unconstitutional. Appellant's App. p. 23. The trial court denied Howard's Motion to Suppress on November 25, 2003.

At the beginning of Howard's jury trial, Howard moved to dismiss his charge of Class D felony operating while an habitual traffic violator. Howard asserted the charge constituted an improper double enhancement because the convictions upon which the Bureau of Motor Vehicles based Howard's November 12, 1992 habitual traffic violator suspension were the same convictions supporting the State's habitual substance offender allegation. The trial court denied Howard's Motion to Dismiss.

The trial court gave the following preliminary jury instruction:

> The Indiana Rules of Evidence allow the court to permit jurors to submit questions to be asked of witnesses to clarify the [witness'] testimony. You may do so in this case by putting your questions in writing and submitting them to me after the lawyers have completed their examination of the witness.

Appellee's App. p. 1.

Late in the trial, Howard moved for a mistrial pursuant to Evidence Rule 614(d), asserting the trial court was required to ask jurors if they had questions before excusing each witness and failed to do so.

On December 3, 2003, the jury found Howard guilty of Class A felony dealing in

---

7. In Officer Dombkowski's training and experience, people who have trouble providing a date of birth are often lying about their identity. Tr. pp. 129–30.

methamphetamine, the lesser-included offense of Class D felony possession of methamphetamine, Class C felony Dealing in a Schedule IV controlled substance, the lesser-included offense of Class D felony possession of a Schedule IV controlled substance, Class D felony operating a vehicle while an habitual traffic violator, and Class B misdemeanor false informing. Howard then waived his right to a jury for his habitual substance offender determination and was found to be an habitual substance offender on January 5, 2004.

On January 26, 2004, the trial court sentenced Howard to thirty-five years for his Class A felony dealing in methamphetamine conviction, which was enhanced by five years due to his habitual substance offender adjudication. The trial court then suspended eighteen years of Howard's sentence, ordered two years of Howard's executed sentence to be served on work release, and ordered the remainder of Howard's sentence to be served in the Department of Correction.

The trial court also sentenced Howard to concurrent terms of six years for his Class C felony dealing in a Schedule IV controlled substance conviction, two years for his Class D felony operating while an habitual traffic violator conviction, and one-hundred and eighty days for his Class B misdemeanor false informing conviction. The trial court finally merged Howard's lesser-included offenses. Howard now appeals.

## I. The Admission of Evidence

Howard challenges the trial court's admission of evidence obtained from his search and seizure on the basis that (1) the seat belt enforcement zone that led to his arrest was not reasonable and (2) the search of his person and vehicle were improper.

A trial court has broad discretion when determining whether evidence is admissi-ble, and will only be reversed upon a showing of an abuse of that discretion. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct.App.2003). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* An abuse of discretion also occurs when the trial court has misinterpreted the law. *Carpenter v. State*, 786 N.E.2d 696, 703 (Ind.2003).

### A. The seat belt enforcement zone

Howard asserts the seat belt enforcement zone that led to his arrest was unreasonable pursuant to the Indiana Constitution under *Gerschoffer*. In *Gerschoffer*, our supreme court discussed the permissibility of sobriety checkpoints that detained motorists without a suspicion of criminal activity. 763 N.E.2d at 964. In noting that there are circumstances in which such checkpoints are permissible, *Gerschoffer* established several factors that must be present in order to conduct suspicionless stops. *Id.* at 964–71.

However, *Gerschoffer* is not applicable here because the seat belt enforcement zone in the case at bar did not randomly detain motorists without a reasonable suspicion of criminal activity but only detained motorists who were observed driving without the proper use of their seat belt.

As Officer Dombkowski stated:

We do not perform any roadblocks or anything of that nature. We were just simply standing on the sidewalk, visually inspecting people as they drove by, whether or not they were wearing their seat belt. If they were not wearing their seat belt, they would have been flagged down.

Tr. p. 125.

Such activity is clearly permissible under the Indiana Constitution. *Baldwin v. Reagan* stated:

[A] police officer may not stop a motorist in Indiana for a possible seat belt violation *unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by law.* This reasonable suspicion exists where the officer observes the driver or passenger under circumstances that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seat belt as required by law.

715 N.E.2d 332, 337 (Ind.1999) (emphasis added); *see also Peete v. State,* 678 N.E.2d 415, 419 (Ind.Ct.App.1997), *trans. denied* ("It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction.").

Deputy Walker noted that, before Howard was ordered to pull over, "[Howard] had no shoulder harness strap, indicating there was no seat belt worn by [Howard]." Tr. p. 8. Officer Dombkowski noted:

I also witnessed the driver, later identified as Mr. Howard, fumbling around with his seat belt. He pulled it over his shoulder and tried buckling it, while I was witnessing him do that.

Tr. p. 15. The failure of a motorist to wear a seat belt is a Class D infraction. Ind.Code § 9–19–10–2 (1992); Ind.Code § 9–19–10–8 (1992).

■ The observations of Deputy Walker and Officer Dombkowski permitted them to order Howard to the side of the road, and the trial court did not abuse its discretion when it determined the seat belt enforcement zone did not violate the Indiana Constitution.

### B. *Search and Seizure*

Howard also challenges the trial court's admission of evidence used to support his conviction on the basis that Officer Dombkowski was not permitted to (1) detain him after he was initially pulled over, (2) re-

move him from his vehicle, (3) obtain his wallet, or (4) perform an inventory search of his vehicle.

### 1. *Howard's seizure*

■ Howard contends Officer Dombkowski was not permitted to detain him after his initial seizure pursuant to Indiana Code section 9–19–10–3, which states:

A vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained *solely* because of a violation of this chapter.

Ind.Code § 9–19–10–3 (1992) (emphasis added).

While interpreting this statute, *State v. Morris* held:

We think the plain language of this statute evidences the General Assembly's intent that a traffic stop based upon the failure of either the driver or passenger to wear a seat belt, standing alone, does not provide reasonable suspicion for the police to unilaterally expand their investigation and "fish" for evidence of other possible crimes. However, when circumstances arise after the initial stop that create reasonable suspicion of other crimes, further reasonable inspection, search, or detention is no longer "solely" because of a seat belt violation and does not contravene the plain language of the statute. The officer may only expand his or her investigation subsequent to the stop if other circumstances arise after the stop, which independently provide the officer with reasonable suspicion of other crimes. Reasonable suspicion exits where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent per-

son to believe that criminal activity has or is about to occur.

732 N.E.2d 224, 228 (Ind.Ct.App.2000).

Howard contends the facts of this case do not permit such investigation because he provided Officer Dombkowski with a name, date of birth, and registration and the yielding of such information should have completed any investigation surrounding his seat belt violation. Br. of Appellant at 9. However, Howard fails to note (1) he provided the wrong name, (2) Officer Dombkowski's training and experience led him to believe Howard's hesitation and correction of his date of birth was indicative of deception, and (3) the registration provided by Howard belonged to another vehicle.

As the State notes, "the officer could not complete the seat belt stop and issue a citation for the seat belt violation until he first confirmed [Howard's] identity." Br. of Appellee at 13. Because Officer Dombkowski was required reliably to obtain Howard's identity before a citation could be issued, he was permitted to detain Howard long enough to discover Howard's true identity.

Howard also contends that *Morris* is distinguishable from the case at bar because Officer Dombkowski did not obtain Howard's driver's license until after he obtained Howard's wallet. Br. of Appellant at 12. However, Howard's contention is self-defeating, as Officer Dombkowski did not have an opportunity to obtain Howard's identification—due to Howard's attempt to deceive—until this point.

### 2. *Howard's removal from his vehicle*

■ Howard claims Officer Dombkowski was not permitted to remove him from his vehicle and, absent such removal, Officer Dombkowski would not have developed probable cause to arrest him.

■ However, a law enforcement officer may, "as a matter of course," order a driver to exit a lawfully stopped vehicle. *Tumblin v. State,* 736 N.E.2d 317, 321 (Ind.Ct.App.2000), *trans. denied* (citing *Tawdul v. State,* 720 N.E.2d 1211, 1214 (Ind.Ct.App.1999), *trans. denied* ). Once a vehicle has been lawfully stopped, the intrusion of asking the driver to exit is de minimis. *Id.* (citing *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)).

■ Furthermore, it was reasonable for Officer Dombkowski to maintain control over Howard's knife. Howard attempts to counter this assertion by maintaining it is not illegal to carry a knife and Officer Dombkowski did not feel threatened by the knife.[8] Br. of Appellant at 9. However, the fact that it is legal to carry a knife does not diminish the possible threat to officer safety.[9] Furthermore, the fact that Officer Dombkowski did not feel threatened by the knife does not diminish the reasonableness of his decision to seize it. An officer should not have to wait to feel threatened by a deadly weapon before neutralizing it in a reasonable and non-obtrusive manner.

### 3. *Howard's wallet*

Howard claims Officer Dombkowski's seizure of his wallet required a search warrant, exigent circumstances, or his con-

---

8. When asked why he removed the knife, Officer Dombkowski stated, "to protect my safety as well as other officers at the scene." Tr. p. 131.

9. It is also legal to carry a licensed handgun. Such legality does not diminish the officer's reasonableness in seizing and maintaining control of such a weapon during a lawful stop.

sent and, in the absence of such a finding, the fruits of his wallet's seizure should be suppressed.

■ The State asserts Howard's failure to argue the propriety of his wallet's seizure at trial waives this issue for review. We agree. At trial, Howard only asserted (1) the seat belt enforcement zone in which he was pulled over did not meet the requirements of *Gerschoffer* and (2) the inventory search of his vehicle was improper. Appellant's App. p. 23. A defendant may not raise one ground for objection at trial and argue a different ground on appeal. *Sharp v. State*, 807 N.E.2d 765, 768 (Ind.Ct.App.2004). The failure to raise an issue at trial waives the issue for appeal. *Id.*

Waiver is particularly appropriate under the facts and circumstances of this case. Most of Howard's contentions regarding the seizure of his wallet assert the State failed to present evidence or argument to meet its burden of proving the seizure of his wallet was permissible. Br. of Appellant at 13. It would be highly improper to fault a party for failing to present evidence to meet their burden when they were not called upon to do so.

■ Waiver notwithstanding, we reject Howard's contentions. Howard states, "there was no testimony at trial that Officer Dombkowski secured a search warrant before *reaching into Howard's back pocket and pulling out his wallet*," there was no evidence of consent on the part of the defendant," "the officer testified he *reached into Howard's pocket and removed Howard's wallet*." Br. of Appellant at 13–14 (emphasis added) (citing Tr. p. 132). However, Officer Dombkowski's actual testimony merely stated, "I went ahead and obtained the wallet from Mr. Howard." Tr. p. 132.

Officer Dombkowski's brief testimony concerning this matter is, at best, ambiguous as to the method in which he obtained Howard's wallet and as to Howard's possible consent. Because of this ambiguity and the State's lack of an opportunity to establish consent, Howard has failed to establish his right to appellate relief.

### 4. *The inventory search*

■ Howard challenges the propriety of the BMW's inventory search. In determining the propriety of an inventory search, the threshold question is whether the impoundment itself was proper. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002). An impoundment is warranted when it is part of the routine administrative caretaking functions of the police or when it is authorized by statute. *Id.* To show that an inventory search was part of the community caretaking function, the State must demonstrate that: "the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and ... the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation." *Id.* (quoting *Woodford v. State*, 752 N.E.2d 1278, 1281 (Ind. 2001)).

Indiana Code section 9–18–2–43(a) states in part:

[A] law enforcement officer authorized to enforce motor vehicle laws who discovers a vehicle required to be registered under this article that does not have the proper certificate of registration or license plate:

(1) shall take the vehicle into the officer's custody; and

(2) may cause the vehicle to be taken to and stored in a suitable place until:

(A) the legal owner of the vehicle can be found; or

(B) the proper certificate of registration and license plates have been procured.

Ind.Code § 9–18–2–43(a) (1992). Indiana Code section 9–22–1–5 states, "When an officer discovers a vehicle in the possession of a person other than the person who owns the vehicle and the person cannot establish the right to possession of the vehicle, the vehicle shall be taken to and stored in a suitable place." Ind.Code § 9–22–1–5 (1992). The registration Howard gave to Officer Dombkowski belonged to another vehicle and another person. Tr. pp. 135–36. Accordingly, Officer Dombkowski was permitted to impound the BMW.

Section III(A)(3) of the Lafayette Police Department policy for conducting inventory searches states, "If someone is available to legally drive the vehicle and the driver/owner approves, then the officer may release the vehicle without inventorying it." Ex. Vol., State's Ex. A. Howard contends that, because he made no attempt to find someone to drive the BMW away, Officer Dombkowski's decision to impound the BMW did not comply with this policy. However, such an attempt would have been futile, as no one could "legally" drive away an unregistered vehicle.

Because the BMW was improperly registered, the decision to have it impounded was reasonable.[10] *See Faust v. State,* 804 N.E.2d 1242, 1244 (Ind.Ct.App.2004), *trans. denied* (impoundment valid pursuant to Indiana Code section 9–18–2–43 where no one in the vehicle had a valid driver's license and the plate was not registered to the vehicle).[11] Accordingly, the

trial court's decision to admit evidence that was discovered pursuant to the BMW's search was within its discretion.

## II. Jury Questioning

During the second day of trial, Howard moved for a mistrial on the basis that witnesses were being excused without the court asking jurors if they had questions. Howard claims it was error for the trial court to deny this motion.

A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Hyppolite v. State,* 774 N.E.2d 584, 597 (Ind. Ct.App.2002), *trans. denied.* The decision to grant a motion for a mistrial is a matter committed to the trial court's sound discretion. *Id.* When determining whether a mistrial is warranted, the court on review must consider whether the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.*

Indiana Jury Rule 20(a)(7) states in part:

(a) The court shall instruct the jury before opening statements by reading the appropriate instruction which shall include at least the following:

(7) That jurors may seek to ask questions of the witnesses by submission of questions in writing.

Ind. Jury Rule 20(a)(7) (2004). Indiana Evidence Rule 614(d) states in part:

A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will

---

**10.** Howard does not seem to challenge the reasonableness of the actual inventory of the BMW, and it is not readily apparent that the inventory was improper.

**11.** We also note the BMW could have been properly searched incident to Howard's ar-

rest. *See Black v. State,* 810 N.E.2d 713, 715–16 (Ind.2004) (citing *Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)).

decide whether to submit the questions to the witness for answer.

Ind. Evidence Rule 614(d) (2004).

At the beginning of trial, the trial court instructed the jury in part:

> The Indiana Rules of Evidence allow the court to permit jurors to submit questions to be asked of witnesses to clarify the [witness'] testimony. You may do so in this case *by putting your questions in writing and submitting them to me* after the attorneys have completed their examination of the witness.

Appellee's App. p. 1; Tr. pp. 54–56 (emphasis added).

Howard relies on *Ashba v. State*, 808 N.E.2d 670 (Ind.Ct.App.2004),[12] in support of his argument. In *Ashba*, the trial court gave the following preliminary instruction:

> When counsel have finished questioning the witnesses, if you feel there are substantial questions that should be asked, you will be given an opportunity to do so prior to the witness being excused.

*Id.* at 672. While discussing this instruction's failure to adequately give the jury an opportunity to ask questions, *Ashba* stated:

> Indeed, it seems that the trial court here attempted to do as much "just from an eye contact trying to check and see whether or not, you know, there were any questions." *Such a procedure is not erroneous.* However, in its preliminary instructions, the trial court had told jurors that they could ask questions of

the witnesses and would "be given an opportunity to do so prior to that witness being excused." The trial court's instruction did not tell jurors that it would be scanning their faces to see if they had questions. *Consequently, the jurors may not have known when to ask their questions.*

*Id.* at 674 (internal citations omitted) (emphasis added).

We completely agree with *Ashba's* holding. However, *Ashba's* holding does not require the trial court to ask the jury if it has questions after excusing each witness. *Ashba* merely requires the trial court to give a preliminary instruction that does not leave the jurors in doubt as to how they may ask questions. Indeed, *Ashba* specifically states that the trial court may use a variety of methods to obtain jury questions so long as the jurors know when they will be given an opportunity to ask questions. *Id.*

The method chosen by the trial court in the case at bar clearly satisfies *Ashba*, Jury Rule 20(a)(7), and Evidence Rule 614(d). Instructing jurors that they may put their question in writing and submit it to the court unambiguously informs the jurors how to submit a question. *See Ashba*, 808 N.E.2d at 674 ("Another mode of inquiry could be for the trial court to instruct jurors to verbally or *physically indicate* if they have any questions."). Furthermore, the requirement of asking

---

12. We note that the version of *Ashba v. State* actually contained in the North East Reporter, under 808 N.E.2d 670 (Ind.Ct.App.2004), is an incorrect version of the opinion, and the dicta contained in it indicating that a trial court is required ask the jury if it has questions before excusing each witness should be disregarded. [Editor's Note: The original decision in *Ashba v. State*, reported at 808 N.E.2d 670, was superseded by the version reported at 816 N.E.2d 862.] Such a requirement is neither contained in the correct version of *Ashba* nor Indiana Jury Rule 20(a)(7). An accurate copy of *Ashba*, and the one relied upon by this opinion, can be found at 2004 Ind.App. LEXIS 898, which is also listed on LEXIS under 808 N.E.2d 670. The North East Reporter version of *Ashba*, 808 N.E.2d 670, has since been vacated and can now be found at *Ashba v. State*, 2004 Ind.App. LEXIS 2020.

jurors if they have any questions before excusing each witness cannot be found in Jury Rule 20(a)(7) or Evidence Rule 614(d). Finally, requiring the trial court to ask the jurors if they have any questions before excusing each witness would render Jury Rule 20(a)(7)'s requisite preliminary instruction superfluous.

 A trial court is merely required not to leave the jurors in doubt as to how to submit a question. The trial court's method of accomplishing this requirement,[13] and its decision to deny Howard's motion for a mistrial, was well within its discretion.[14]

### III. Double Enhancement

 The State used Howard's three previous operating while intoxicated convictions to allege Howard to be an habitual substance offender. These three convictions also supported Howard's November 12, 1992 habitual traffic violator suspension. Howard claims that, because both allegations use the same underlying convictions, his Class D felony operating while an habitual traffic violator conviction and his habitual substance offender determination constituted an impermissible double enhancement.

 It is generally true that sentences enhanced under a progressive penalty scheme due to a prior conviction may not be further enhanced under a specialized habitual offender statute. *See State v. Downey*, 770 N.E.2d 794, 796 (Ind.2002). Nonetheless, Howard's claim fails.

Howard was convicted of Class D felony operating while an habitual traffic violator pursuant to Indiana Code section 9–30–10–16, which only requires proof that Howard operated while his driving privileges were suspended and is not premised upon a prior conviction. Howard was not convicted of Class C felony operating while an habitual traffic violator pursuant to Indiana Code section 9–30–10–17,[15] which requires proof of a conviction under Indiana Code section 9–30–10–16. Appellant's App. p. 373.

In Howard's cited case of *Parrett v. State* and *Stanek v. State*, which was cited by *Parrett*, the Class C felony convictions were found to be impermissible double enhancements. 800 N.E.2d 620, 622 (Ind.Ct. App.2003); 603 N.E.2d 152, 153–54 (Ind. 1992). Howard has directed us to no case in which the unenhanced Class D felony operating while an habitual traffic violator conviction formed the basis for an improper double enhancement.

Unlike its Class C felony counterpart, Class D felony operating while an habitual traffic violator is not a progressively enhanced penalty; it is simply the proscribed punishment for driving after one's license has been suspended. Accordingly, Howard's habitual substance offender determination was the only enhancement of his sentence, and he was not the recipient of an improper double enhancement.

### Conclusion

The trial court did not abuse its discretion, the trial court was not required to ask

---

**13.** It is worthy of note that the trial court's chosen method clearly achieved this requirement's goal, as a juror did submit a question to the court and this question appears to be related closely to Howard's possession of methamphetamine acquittal. Tr. pp. 198–200.

**14.** Had the trial court erred in instructing the jury, the defendant's tardy objection would

have waived this issue for review. *See Robles v. State*, 705 N.E.2d 183, 187 (Ind.Ct.App. 1998) (a party may not sit idly by, permit the court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time).

**15.** Ind.Code § 9–30–10–17 (1992).

the jury whether they had questions before excusing each witness, and Howard did not receive an improper double enhancement.

Affirmed.

DARDEN, J., and FRIEDLANDER, J., concur.