OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio ("state"), appeals the decision of the Warren Court of Common Pleas to grant a motion to suppress evidence filed on behalf of defendant-appellee, Roger Green.
 {¶ 2} In August 2004, appellee was indicted on the charge of having a weapon under disability. Appellee filed a motion to suppress for use as evidence a handgun, the trace summary of the handgun, and any statements appellee made as the result of the search of the handgun.
 {¶ 3} The facts adduced at the hearing on the motion to suppress show that five Warren County law enforcement officers arrived in the early morning hours at appellee's residence to execute an arrest warrant in February 2004. The person sought in the arrest warrant was reportedly wanted in connection with a stabbing in another county.
 {¶ 4} Officers knocked on the door, which was answered by appellee's wife ("wife"). The wife called to appellee and asked the officers to enter the residence. Once inside, officers smelled the "strong smell of burnt marijuana." The officer who testified at the suppression hearing stated that he saw in plain view on the couch a box containing a handgun with a large ammunition magazine and a wire coil wrapped around the gun to hold the magazine. The officer also observed some marijuana and rolling papers on a table near the couch.
 {¶ 5} One officer reportedly stood over the handgun while the testifying officer spoke with appellee regarding the warrant. After reviewing appellee's personal information, officers determined that appellee was not the same individual listed in the arrest warrant.
 {¶ 6} During the course of this encounter, appellee stated that he had just smoked marijuana and that the handgun belonged to his wife. The wife also told police that the handgun belonged to her. The officer testified that he noted the serial number on the gun, ran a check on the number, and learned that the handgun was not reported stolen. Appellee was removed from the residence and charged with possession of marijuana and drug paraphernalia. Officers left the handgun at the residence.
 {¶ 7} A deputy from Greene County testified at the suppression hearing that he was investigating a murder when he visited appellee in prison in late July 2004. The deputy testified that he visited appellee to ask him what he knew about the murder of a man with whom appellee was acquainted. Appellee received and waived his Miranda rights.
 {¶ 8} During the discussion, the deputy asked appellee if he was familiar with a particular handgun belonging to J.S., a mutual acquaintance of both appellee and the murder victim. Appellee told the deputy that he had the handgun in his possession during part of February 2004 because he intended to buy it from J.S. Appellee said J.S. retrieved the gun at the end of February when appellee did not pay for it.
 {¶ 9} The deputy testified that he was aware that the same handgun was the subject of a serial number check in February 2004 in Warren County. The deputy testified that the gun's owner, J.S., told police that the handgun was with his girlfriend and police had already confiscated the handgun before they talked with appellee in prison. The deputy contacted Warren County law enforcement after his prison discussion with appellee.
 {¶ 10} Appellee argued in his motion to suppress that the gun's serial number was obtained in violation of his constitutional rights, and, therefore, the rest of the evidence should be suppressed as fruits of the poisonous tree. The trial court agreed that the state was not justified in obtaining the gun's serial number, and granted the motion to suppress. The state appeals the ruling, and presents three assignments of error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE SEARCH OF THE GUN IS JUSTIFIED BY OFFICER SAFETY AND SEARCH INCIDENT TO ARREST."
 {¶ 13} The Fourth Amendment to the United States Constitution provides that people are to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.State v. Cranford, Montgomery App. No. 20633. 2005-Ohio-1904, ¶11. The exclusionary rule is a judicially created remedy applied to exclude evidence from the state's case in chief when it has been obtained by police through an illegal search or seizure in violation of the Fourth Amendment. Id. at ¶ 21.
 {¶ 14} In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Perry, Preble App. No. CA2004-11-016,2005-Ohio-6041, at ¶ 9. An appellate court independently determines without deference to the trial court whether the trial court applied the appropriate legal standard to the facts. Id.
 {¶ 15} The officer testified at the suppression hearing that the handgun was secured or seized for officer safety, explaining that "a loaded handgun on the couch" is "one of the things you pick up at someone's house [when serving a warrant]."
 {¶ 16} The trial court determined that the officers' conduct with the handgun was not justified by officer safety. The trial court found that five officers were inside the residence to affect the arrest warrant, appellee and his wife were reportedly cooperative with officers, and officers could not fear for their safety when they permitted appellee to retrieve his identification from another room unaccompanied.
 {¶ 17} While the trial court made the factual finding that appellee retrieved his identification in another room unaccompanied by police, we note that the officer testified that, "[appellee] had it [ID] in his wallet and he had to go back to the bedroom to get it out of his pants." There was no testimony concerning whether appellee was or was not accompanied by police into the bedroom.
 {¶ 18} A police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety. United States v. Bishop (C.A.6, 2003), 338 F.3d 623,628; and see United States v. Frederick, 2005 Fed. App. 0864N, No. 04-5614 (some objects are "dangerous in themselves," and the test is not whether the officers in fact feared for their safety, "but whether a reasonable officer informed of these facts could conclude that the weapon posed an immediate threat to officer or public safety").
 {¶ 19} "An officer should not have to wait to feel threatened by a deadly weapon before neutralizing it in a reasonable and non-obtrusive manner." Howard v. State (Ind.App. 2004),818 N.E.2d 469, 476 (seized knife found on defendant during traffic stop).
 {¶ 20} We cannot agree with the trial court's conclusion that the officers were not operating under concerns for officer safety when they secured the loaded gun they plainly observed on the couch. Further, we cannot agree with the trial court's conclusion that officers were not permitted to view the serial number once they secured the gun.
 {¶ 21} The trial court found that police conducted an illegal search in obtaining the serial numbers. The trial court relied upon Arizona v. Hicks (1987), 480 U.S. 321, 107 S.Ct. 1149. InHicks, police entered a home to investigate a shooting, and, suspecting that expensive stereo equipment in the apartment was stolen, moved some of the stereo equipment to observe and check the serial numbers on the equipment. The U.S. Supreme Court held that recording the serial numbers of the stereo equipment was not a seizure because it did not interfere with a defendant's possessory interest, but, moving the equipment to see the serial numbers constituted a search.
 {¶ 22} Once an officer had a valid reason to secure and possess the handgun, he was able to obtain the serial numbers without violating appellee's constitutional rights. See UnitedStates v. Lara (C.A.9, 1991), 932 F.2d 973, (deputy testified that when nonofficer personnel are present at a search site, weapons found in plain view are disarmed as a safety precaution, and therefore, having a valid reason to pick up the weapon and lawfully possess it, the decision that officer was entitled to examine both guns for missing serial numbers was not erroneous);State v. Wilson (1998), 93 Wash App. 1025 (there is warrantless seizure exception for officer safety, and where officer is lawfully in possession of gun, officer is lawfully in possession of serial numbers; plain view analysis of Arizona v. Hicks is inapplicable when Hicks involved extent to which officers can expose to view items in their presence, but not in their possession); United States v. Watts (C.A.8, 1993), 7 F.3d 122.
 {¶ 23} A Washington court found that it was constitutionally reasonable to insure both the safety of officers conducting a consent search and a private citizen in the house when an officer detained a man and a gun he discovered in another room in the house. The court found that looking at the exterior of an object from a lawfully obtained vantage point, without moving the object, is not a search, and once an officer lawfully had the gun in hand, he needed no additional constitutional justification to observe model and serial number. State v. King (1998),89 Wash.App. 612, 622-623, 949 P.2d 856, 862; see United States v.Frederick, 2005 Fed. App. 0864N (officer had authority to determine if weapon loaded and upon finding it loaded, could temporarily seize it to determine who owned it and to maintain immediate control of it).
 {¶ 24} Further, it is reasonable for an arresting officer to search for and seize any evidence on the arrestee's person and the area into which an arrestee might reach in order to grab a weapon or evidentiary items. Chimel v. California (1969),395 U.S. 752, 762-763, 89 S.Ct. 2034. "A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested." Id.; see State v. Gutierrez, 136 N.M. 18,94 P.3d 18, 23-24, 2004-NMCA-081 (in a search incident to arrest, once officer was in lawful possession of the gun, he was permitted to check the serial number in the database).
 {¶ 25} In the case at bar, law enforcement officers were present to arrest appellee on a warrant for an alleged violent offense. After it was determined that the arrest warrant listed another person, officers had already obtained probable cause to arrest appellant on different charges. Temporarily seizing the loaded handgun was lawful and prudent conduct for the officers and, once they possessed the gun, checking its serial number was not an illegal search upon which the evidence at question should be suppressed.
 {¶ 26} As this court previously stated, the circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene as he or she reacts to events as they unfold. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." State v.Bernath, Butler App. Nos. CA2004-07-167 and 168, 2005-Ohio-2111, at ¶ 9, citing State v. Andrews (1991), 57 Ohio St.3d 86,87-88.
 {¶ 27} Accordingly, we find that the trial court erred in granting the motion to suppress based upon the officers' conduct at appellee's home. The state's first assignment of error is sustained.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE RECORDING OF THE SERIAL NUMBERS OFF THE GUN IS NOT A SEIZURE BECAUSE IT DOES NOT MEANINGFULLY INTERFERE WITH THE DEFENDANT'S POSSESSORY INTERESTS."
 {¶ 30} Based upon our finding in the first assignment of error that the recording of the serial number was not an improper search and suppression of this evidence was error, the state's second assignment of error is moot.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "EVEN IFTHE SEARCH WAS NOT JUSTIFIED BY A WARRANT EXCEPTION, THE TRIAL COURT IMPROPERLY OMITTED THE DEFENDANT'S STATEMENT REGARDING THE GUN BECAUSE THE STATEMENT QUALIFIES AS AN EXCEPTION TO THE FRUIT OF THE POISONOUS TREE DOCTRINE."
 {¶ 33} The trial court found that appellee's statements made to the deputy in prison, while voluntary, would not have occurred had the police not "illegally seized" the gun's serial number at appellee's residence.
 {¶ 34} The exclusionary rule applies not only to primary evidence directly obtained by police during an illegal search or seizure but also to evidence discovered from knowledge gained by police as a result of the illegal search or seizure.Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385,391-392, 40 S.Ct. 182; see Wong Sun v. United States (1963),371 U.S. 471, 484, 83 S.Ct. 407. Derivative evidence is known as "fruit of the poisonous tree." Nardone v. United States (1939),308 U.S. 338, 341, 60 S.Ct. 266.
 {¶ 35} This court found that the gun's serial number and the check of that serial number was justified and not an illegal search or seizure. Accordingly, appellee's statements made in prison were not the result of an illegal search and not the fruit of the poisonous tree. We need not engage in any further analysis on this issue. The state's third assignment of error is likewise rendered moot by our decision on the first assignment of error.
 {¶ 36} Appellee's motion to suppress should be overruled. The trial court's judgment is reversed and this matter remanded to the trial court for further proceedings.
Powell, P.J., and Bressler, J., concur.