Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not
be regarded as precedent or cited
before any court except for the
purpose of establishing the defense of
res judicata, collateral estoppel, or the
law of the case.



FILED

Nov 13 2012, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DORI NEWMAN**
Newman & Newman, PC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH RIDGE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1112-CR-1168 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne Sturtevant, Judge
Cause No. 29D05-1106-CM-9316

**November 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, Joseph Ridge appeals his conviction for operating a vehicle while intoxicated, a Class A misdemeanor. Ridge raises three issues for our review: 1) whether the trial court abused its discretion in denying Ridge's request to hire an expert at public expense; 2) whether the trial court abused its discretion in allowing the State's toxicology witness, Dr. Scott Kriger, to hear the testimony of the arresting officer, Deputy Kent Mustain; and 3) whether the trial court abused its discretion in admitting Dr. Kriger's expert testimony that Ridge was intoxicated on K2 at the time of the traffic stop. Concluding the trial court did not abuse its discretion in either denying Ridge's request to hire an expert or allowing Dr. Kriger to hear the testimony of Deputy Mustain, and further concluding Ridge waived appellate review of the admission of Dr. Kriger's testimony regarding Ridge's K2 intoxication but the trial court did not abuse its discretion in admitting the testimony, we affirm.

## Facts and Procedural History

Around 5:00 p.m. on June 18, 2011, Hamilton County Sheriff's Deputy Mustain observed Ridge's vehicle pull out of westbound traffic on State Road 32 and stop in the eastbound lane, facing oncoming traffic. Deputy Mustain activated his overhead lights and pulled behind Ridge's vehicle, which remained stopped. When Deputy Mustain approached the driver's side window, he observed Ridge slumped over as if he were looking down. Deputy Mustain had to knock on the window to get Ridge's attention. Ridge looked at the deputy with red, bloodshot eyes. Ridge was sluggish and confused;

2

he had trouble speaking, could not follow directions, and failed several field sobriety tests.

When asked by Deputy Mustain if had taken any drugs, Ridge admitted that he had smoked a K2 cigarette before driving. The remainder of the cigarette was on the driver's side floorboard. K2, also known as spice, is a synthetic cannabinoid, which mimics the effect of marijuana or THC. Symptoms of synthetic cannabinoid use include: very slow, slurred speech, delayed reaction, an inability to process information, an inability to perform complex tasks, an inability to perceive surroundings, physical instability and poor coordination, and poor hand/eye coordination.

Based upon Ridge's admission that he had smoked a K2 cigarette and his behavior at the scene, Deputy Mustain, a certified field sobriety instructor and drug recognition expert, surmised that Ridge was under the influence of K2 and offered to take Ridge to the hospital to conduct a drug recognition test. When it appeared that Ridge did not understand, Deputy Mustain placed Ridge in handcuffs to transport him to the hospital. On the way, Ridge had rigid muscles, became agitated, and spoke incoherently. At the hospital, he tested negative ("0.00" on a portable breath test) for alcohol. After a number of tests and an interview, Deputy Mustain concluded that Ridge was under the influence of a marijuana/cannabinoid drug.

The State charged Ridge with Class A misdemeanor operating a vehicle while intoxicated. After finding Ridge indigent, the trial court appointed defense counsel. Two days prior to trial, Ridge moved for public funds to hire a toxicologist who charged a $2,000 nonrefundable retainer. During a hearing on the issue, Ridge first argued he needed an expert to review toxicology reports but then, after learning that the State had

no intention of using any toxicology reports, limited the need for an expert to explaining the effects of K2. Ridge then argued that he needed an expert to review the police in-car video capturing the events of his arrest for possible tampering. The trial court denied Ridge's motion for his own expert witness at public expense.

At the start of trial the next day, December 1, 2011, Ridge moved in limine to exclude Dr. Kriger's opinion on Ridge's K2 intoxication at the time of the traffic stop on the basis that his testimony lacked a proper factual foundation. The trial court granted that motion until a proper foundation had been laid.

Ridge also moved for a separation of witnesses, and the State requested that Dr. Kriger be allowed to remain in the courtroom to hear Deputy Mustain's testimony. Ridge argued that if Dr. Kriger's testimony was limited to explaining the effects of K2 and not extended to toxicology reports, then Dr. Kriger's presence in the courtroom was not essential. The State responded that it planned to use Indiana Evidence Rule 703[1] to offer Dr. Kriger's opinion of Ridge's intoxication at the time of the traffic stop based on the evidence introduced through Deputy Mustain, including the in-car video. Citing Evidence Rule 615 clause 3, the trial court granted the motion for separation of witnesses but made an exception for Dr. Kriger as an expert witness. The trial court reasoned that before Dr. Kriger could testify as to Ridge's intoxication, the State needed to establish a proper factual foundation and it was, "quite frankly, cleaner and easier for the jury to allow Dr. Kriger to testify from facts that he [had] heard go into the record than some cumbersome hypothetical that tri[ed] to incorporate all those facts." Transcript at 23.

---

[1] Under Evidence Rule 703, an expert may base his opinion on facts made known to the expert at or before the hearing.

4

During trial, Deputy Mustain testified about Ridge's admission that he had smoked a K2 cigarette, the burnt cigarette on the floorboard, and Ridge's behavior. After Deputy Mustain's testimony, Dr. Kriger explained the general nature of K2, its effects on the human body, and—after the trial court found that the State had laid a proper factual foundation—his opinion that Ridge was intoxicated on K2 at the time of the traffic stop. The jury found Ridge guilty. Ridge now appeals his conviction.

<u>Discussion and Decision</u>

## I. Request to Hire an Expert at Public Expense

### A. Standard of Review

A trial court has discretion in granting or denying requests to provide indigent criminal defendants with the assistance of experts at public expense, and such decisions are overturned only for an abuse of discretion. <u>Scott v. State</u>, 593 N.E.2d 198, 200 (Ind. 1992).

### B. Necessity for an Expert

Ridge appeals the trial court's denial of his request to hire an expert witness at public expense to help prepare his defense, specifically to explain the effects of K2 and to review the police in-car video for possible tampering. When deciding whether to provide an indigent defendant with expert services at public expense, a trial court must ask whether the services are necessary to assure an adequate defense and whether the defendant specifies precisely how he would benefit from the requested expert services. <u>Kocielko v. State</u>, 938 N.E.2d 243, 254 (Ind. Ct. App. 2010), <u>modified on other grounds</u>

on reh'g, trans. denied. What is "necessary" is highly fact-sensitive; a trial court may consider factors[2] including:

> (1) whether the services would bear on an issue generally regarded to be within the common experience of the average person, or on one for which an expert opinion would be necessary; (2) whether the requested expert services could nonetheless be performed by counsel; (3) whether the proposed expert could demonstrate that which the defendant desires from the expert; (4) whether the purpose for the expert appears to be only exploratory; (5) whether the expert services will go toward answering a substantial question in the case or simply an ancillary one; (6) the seriousness of the charge; (7) whether the State is relying upon an expert and expending substantial resources on the case; (8) whether a defendant with monetary resources would choose to hire such an expert; (9) the costs of the expert services; (10) the timeliness of the request for the expert and whether it was made in good faith; and (11) whether there is cumulative evidence of the defendant's guilt.

Id. at 254-55 (citing Scott, 593 N.E.2d at 200-01). The defendant bears the burden of demonstrating the need for appointment of an expert. Scott, 593 N.E.2d at 200.

The trial court first denied Ridge's request to hire an expert to review the police in-car video, describing such request as exploratory and speculative at best. It noted that the issue was whether the State could prove that Ridge operated a vehicle while intoxicated, not whether the officers had acted inappropriately. In addition, there was no evidence of any tampering with the videotape. Ridge's own attorney admitted that, in her professional opinion, she saw no evidence of tampering. The trial court did not abuse its discretion in denying Ridge's request for an expert for this purpose.

The trial court then considered the relevant factors[3] and denied Ridge's request to hire an expert to discuss the effects of K2. Reviewing the trial court's reasoning, we

---

[2] There is no dispute as to Ridge's indigent status, and thus we will not address that threshold issue but rather focus on the Scott factors.

6

agree. First, the State was using a toxicology expert to educate the jury about K2 and there was no evidence of disagreement among toxicologists or that the proposed expert's testimony would differ from the State's expert about those effects. Second, the proposed expert's willingness to cooperate with Ridge without charge prior to trial would render defense counsel's cross-examination effective. Third, again, there was no evidence that the proposed expert would give a contrary opinion. Fourth, the purpose of the proposed expert appeared to be exploratory. Fifth, the issue of how long the effects of K2 lasted was an ancillary question; the totality of other evidence – including Deputy Mustain's testimony and the in-car video – supported a finding of Ridge's intoxication at the time of the stop. Sixth, a Class A misdemeanor is not a very serious charge. Seventh, although the State planned to use an expert, it also had decided not to introduce the toxicology report into evidence to avoid the expenditure of substantial resources. Eighth, the trial court doubted that Ridge would have spent his own money to hire the proposed expert. Ninth, the proposed expert's $2,000 fee was not reasonable for what the proposed witness could "bring to the table." Tr. at 370. And tenth, the case had been pending for six months, was scheduled for jury trial the day after the hearing on Ridge's motion, and with Ridge in custody, the trial should go on as planned. We add that a second expert's opinion on the effects of K2 would have been cumulative to Dr. Kriger's testimony. Thus, the proposed expert's services were not necessary to assure Ridge an adequate defense.

---

[3] Ridge distinguishes Scott by arguing that his charge of intoxication resulted from K2 ingestion, not alcohol. However, such minor distinction is without effect. Scott provides factors to help determine whether an expert's services are necessary to assure an adequate defense for an indigent defendant and does not limit its holding to experts testifying about intoxication by the consumption of alcohol.

7

Overall, Ridge recounts the procedural history of the case rather than put forward a cogent argument why the trial court abused its discretion. We find no reason to disagree with the trial court and hold that the trial court did not abuse its discretion in denying Ridge's request to hire an expert at public expense.

## II. Witness Separation Order

### A. Standard of Review

Subject to certain exceptions, "[a]t the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses . . . ." Ind. Evidence Rule 615. The determination of whether a witness qualifies for one of the limited exceptions to this Rule is within the trial court's discretion and subject to review for an abuse of that discretion. Long v. State, 743 N.E.2d 253, 257 (Ind. 2001).

### B. Exception for Essential Witnesses

Ridge contends that the trial court abused its discretion in allowing the State's expert witness, Dr. Kriger, to remain in the courtroom and hear Deputy Mustain's testimony although a separation of witnesses motion had been granted. We disagree. The trial court did not abuse its discretion in allowing Dr. Kriger to hear Deputy Mustain's testimony. Although the purpose of a witness separation order is to prevent the testimony of one witness from influencing another, Myers v. State, 887 N.E.2d 170, 190 (Ind. Ct. App. 2008), trans. denied, Evidence Rule 615 clause 3 provides that a witness whose "presence is shown by a party to be essential to the presentation of the party's cause" cannot be excluded. This exception is most frequently employed for expert witnesses, who are believed to be less susceptible to the temptation to shape their

8

testimony. <u>R.R. Donnelley & Sons Co. v. N. Texas Steel Co., Inc.</u>, 752 N.E.2d 112, 133 (Ind. Ct. App. 2001), <u>trans. denied</u>; <u>see also</u> <u>Hernandez v. State</u>, 716 N.E.2d 948, 951 n.3 (Ind. 1999) (acknowledging that Rule 615 clause 3 is typically invoked for an expert witness rather than a fact witness). Additionally, Evidence Rule 703 specifically contemplates that expert witnesses may be in the courtroom for other witnesses' testimony, stating "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert <u>at or before the hearing</u>." (Emphasis added.) To claim the Rule 615 clause 3 exception, the moving party must show that the "witness has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney could not <u>effectively</u> function without the presence and aid of the witness." <u>Hernandez</u>, 716 N.E.2d at 950 (emphasis added).

Ridge argues that the State did not show that Dr. Kriger was essential to its case. Specifically, Ridge points to the State's representations that it would not use Dr. Kriger to testify about toxicology reports and the subsequent denial of his request to hire an expert at public expense. However, such conclusion does not necessarily follow from the State's decision not to use toxicology reports. The State explained its decision regarding the reports was meant to avoid the expenditure of substantial resources.

Furthermore, before its Rule 615 clause 3 request – made in response to Ridge's motion in limine to exclude Dr. Kriger's opinion – the State explained that Dr. Kriger had a specialized expertise in synthetic cannabinoids and, once a proper factual foundation was laid, was going to be asked questions based on Deputy Mustain's testimony and the in-car video. Ridge based his successful motion on the argument that an opinion on

9

Ridge's K2 intoxication based on hypothetical facts, rather than facts admitted into evidence at trial, would be highly prejudicial.

Dr. Kriger could have testified to his opinion based upon hypothetical questions incorporating facts admitted into evidence. See Johnson v. State, 699 N.E.2d 746, 750 (Ind. Ct. App. 1998) ("An expert witness may express his opinion regarding a hypothetical question if the following foundational prerequisites are satisfied: (1) 'the expert's ability to give such an opinion must be established through testimony showing he has the requisite knowledge, skill, education or experience on which to base the opinion'; and (2) 'there must be a proper evidentiary foundation supporting the facts that are included in the hypothetical question.'") (quoting Henson v. State 535 N.E.2d 1189, 1191-92 (Ind. 1989)). Because Dr. Kriger was going to be asked his opinion on facts admitted into evidence at trial, if he were not allowed to stay in the courtroom, then he would have to be provided with daily transcripts and a copy of the in-car video so that he could appropriately form his expert opinion in this case. Dr. Kriger's presence in the courtroom, permitted under Evidence Rule 615 clause 3, streamlined and simplified the presentation of evidence for the jury.

Given the necessity that Dr. Kriger be aware of facts admitted into evidence at trial – not hypothetical facts – and the belief that expert witnesses are less likely to alter their testimony based on what they hear from other witnesses, we hold that the trial court did not abuse its discretion in exempting Dr. Kriger from the separation of witness order.

### III. Admission of Dr. Kriger's Testimony

#### A. Standard of Review

A trial court has broad discretion to determine qualifications of experts and to admit opinion evidence. Sufficiency of foundation is a matter of sound discretion of the trial court and will be reversed only for abuse of that discretion. Hill v. State, 470 N.E.2d 1332, 1336 (Ind. 1984).

#### B. Admission of Dr. Kriger's Testimony

Ridge has waived appellate review of the admission of Dr. Kriger's expert opinion that Ridge was intoxicated on K2 at the time of the traffic stop. A defendant may not raise one ground for objection at trial and argue a different ground on appeal. Howard v. State, 818 N.E.2d 469, 477 (Ind. Ct. App. 2004), trans. denied. The failure to raise an issue at trial waives the issue for appeal. Id. Prior to and during trial, Ridge objected to the testimony on the basis that it lacked factual foundation. On appeal, Ridge bases his objection on a different foundational basis: whether toxicologists are qualified to render opinion testimony on intoxication based on officer testimony and videotape footage and whether Dr. Kriger was so qualified. Having changed foundational objections, Ridge has waived this issue.

Furthermore, the trial court did not abuse its discretion in finding a sufficient factual foundation for Dr. Kriger's expert testimony that Ridge was intoxicated on K2 at the time of the traffic stop. The facts in evidence showed that Ridge consumed a K2 cigarette before driving and that the remainder of the cigarette was on the driver's side floorboard of his vehicle. Deputy Mustain described Ridge's behavior at the time of traffic stop and on the way to the hospital in great detail. Ridge had bloodshot eyes; he

was sluggish and confused; he had trouble speaking, could not follow directions, and failed several field sobriety tests. After arrest and on the way to the hospital, Ridge had rigid muscles, became agitated, and spoke incoherently. He tested negative for alcohol. Dr. Kriger applied his knowledge of the effects of K2 on the human body to these facts to determine that Ridge exhibited these symptoms and was thus intoxicated. In light of the facts in evidence, the trial court did not abuse its discretion in finding a sufficient factual foundation for Dr. Kriger's opinion.

### Conclusion

We conclude the trial court did not abuse its discretion in denying Ridge's request to hire an expert or allowing Dr. Kriger to hear the testimony of Deputy Mustain. Further, although Ridge waived appellate review of the admission of Dr. Kriger's testimony regarding Ridge's K2 intoxication, the trial court did not abuse its discretion in admitting his testimony. Therefore, we affirm Ridge's conviction.

Affirmed.

BAKER, J., and BRADFORD, J., concur.