## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/12/2017, 10:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William T. Myers
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Quinyatte Jarmaine Harrell, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 12, 2017 <br><br> Court of Appeals Case No. 27A02-1702-CR-248 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Dana J. Kenworthy, Judge <br><br> Trial Court Cause No. 27D02-1608-F6-321 |

**Najam, Judge.**

## Statement of the Case

Quinyatte Harrell appeals his conviction for domestic battery, as a Level 6 felony, following a jury trial. Harrell presents a single issue for our review, namely, whether the trial court abused its discretion when it admitted into evidence text messages between him and his wife. We affirm.

## Facts and Procedural History

On August 11, 2016, after Harrell drove his wife, J.H., to work, he and J.H. engaged in a conversation by text message about whether J.H. had deactivated her old Facebook account. J.H. assured him that she had deactivated the account after he had asked her to, but he accused J.H. of lying and stated that it appeared as though she had reactivated the account. Harrell told J.H. that she could "go to hell." State's Ex. 6. Harrell then asked J.H. for money and threatened to "bring[] the cops" with him to her office to "make sure" he got his money. *Id.* Harrell then told J.H. that he got a restraining order against J.H. so that she could not see her ex-husband or daughter again.

In the meantime, Harrell went to the Grant County Sheriff's Department and asked to file a complaint against J.H.'s ex-husband, who was a deputy. Harrell told Chief Deputy Tim Holtzleiter that he and his wife, J.H., both wanted to file complaints against her ex-husband. Chief Deputy Holtzleiter gave Harrell a form to fill out.

At approximately noon that same day, Harrell picked up J.H. for her lunch break, and he drove her to the Sheriff's Department. Harrell did not tell J.H.

why they were going there, but J.H.'s stepfather had told her about Harrell's earlier visit to the Department and Harrell's claim that he and J.H. wanted to file a complaint. J.H. did not understand what was going on, as she did not want to file a complaint, but she went inside and spoke to Chief Deputy Holtzleiter. Before J.H. left, she felt "scared" and almost called a friend to come pick her up, but she eventually got back in the car with Harrell. Tr. Vol. 2 at 82.

[5] Harrell drove J.H. back to her office. While parked in the parking lot at J.H.'s office, Harrell told J.H. that he planned to take his things out of a storage locker they shared. J.H. was worried that he would take some of her things, too, so she grabbed for the keys to the storage locker. Harrell then struck J.H. twice in the back of her head. J.H. screamed out for a friend, C.Z., who was parked nearby. Harrell put J.H. in a headlock and grabbed J.H.'s hair and threatened to pull it out. J.H. screamed for C.Z. again. J.H. then reached for the keys to her car, and Harrell head-butted her twice. C.Z. heard J.H.'s screams and walked up to the car.

[6] C.Z. could see that Harrell "had a hold of" J.H., and C.Z. yelled, "What's going on?" *Id.* at 207. C.Z. ran to J.H.'s side of the car, and Harrell got out and approached C.Z. and J.H. C.Z. saw that J.H.'s hair was "a mess," she was crying "hysterically," and her face was "beet red." *Id.* at 207-08. C.Z. asked them what was going on. Harrell replied, "she's a f***ing b****. She's crazy." *Id.* at 209. J.H. said that Harrell had threatened to crash her car and destroy her personal belongings. C.Z. asked J.H. what she wanted to do, and she

eventually convinced J.H. to go inside the office with her. Harrell refused to leave. C.Z.'s husband was on the phone with her and she told him to call 9-1-1. Harrell said to C.Z., "You haven't seen the last of me, you f***ing b****." *Id.* at 210.

[7] Harrell left J.H.'s office and returned to the residence he and J.H. shared with J.H.'s stepfather, D.P., and her mother. Harrell saw D.P. and told him that he and J.H. had "gotten into it" and that he had "head-butted" J.H. *Id.* at 225. Harrell told D.P. that "he was going to do three years." *Id.* Harrell asked D.P. for a key to a house that D.P. owned nearby so that he could "hide from the cops." *Id.* at 228. D.P. walked with Harrell and let him into the other house. Thereafter, D.P. contacted an officer with the Marion Police Department and gave him a key to the house where Harrell was hiding.

[8] The State charged Harrell with domestic battery, as a Level 6 felony, and intimidation, as a Class A misdemeanor. A jury found Harrell guilty of domestic battery, but acquitted him on the intimidation charge. The trial court entered judgment and sentence accordingly. This appeal ensued.

## Discussion and Decision

[9] Harrell contends that the trial court abused its discretion when it admitted into evidence State's Exhibit 6, which consisted of copies of text messages between Harrell and J.H. during the morning of August 11, 2016. The trial court has "inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." *McManus v. State*, 814

N.E.2d 253, 264 (Ind. 2004) (internal quotation marks omitted). An abuse of discretion occurs when the trial court's judgment "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[10] At trial, on direct examination, J.H. testified that she and Harrell had been texting each other the morning of August 11, and she proceeded to describe, in detail, what they discussed in those messages. Harrell did not object to that testimony. But when the State subsequently moved to admit into evidence copies of the text messages, Harrell objected on the basis that the text messages contained hearsay. The trial court admitted the text messages over Harrell's objection.

[11] On appeal, Harrell maintains that the text messages were inadmissible hearsay under Indiana Evidence Rule 801(c) because "they were being offered to prove the truth of the matter asserted, specifically his intent to commit battery."[1] Appellant's Br. at 8. But, to the extent Harrell asserts that J.H.'s statements in the text message exchange were hearsay, he does not support that assertion with cogent argument. Indeed, as the State correctly points out, J.H.'s text messages were not offered to prove the truth of the matter asserted but were offered to give context to the events that occurred after Harrell picked up J.H.

---

[1] For the first time on appeal, Harrell argues that State's Exhibit 6 was inadmissible under Evidence Rule 704. It is well-settled that a defendant may not raise one ground for objection at trial and argue a different ground on appeal. *Howard v. State*, 818 N.E.2d 469 (Ind. Ct. App. 2004), *trans. denied*. The issue is waived.

for lunch that day. Thus, J.H.'s statements in the exchange were not hearsay. *See, e.g.*, *Williams v. State*, 930 N.E.2d 602, 609 (Ind. Ct. App. 2010), *trans. denied*. And Harrell's statements in the text messages were not hearsay because they were made by Harrell and were offered against him at trial. As such, they were admissible as non-hearsay statements by a party-opponent. *See* Ind. Evidence Rule 801(d)(2)(A); *Pavlovich v. State*, 6 N.E.3d 969, 979 (Ind. Ct. App. 2014), *trans. denied*. The trial court did not abuse its discretion when it admitted into evidence State's Exhibit 6.

[12] In any event, any error in the admission of the text messages would have been harmless. It is well settled that reversible error cannot be predicated upon the erroneous admission of evidence that is merely cumulative of other evidence that has already been properly admitted. *Sibbing v. Cave*, 922 N.E.2d 594, 598 (Ind. 2010). Here, prior to the admission of Exhibit 6 at trial, J.H. had testified, in detail, to the substance of the text message exchange without objection by Harrell. Thus, State's Exhibit 6 was merely cumulative of J.H.'s testimony, and Harrell cannot show reversible error by its admission. Finally, given the substantial evidence against Harrell, including his confession to D.P. and attempt to evade arrest, Harrell cannot show that any error in the admission of the text messages affected his substantial rights. Ind. Appellate Rule 66(A).

[13] Affirmed.

Kirsch, J., and Brown, J., concur.