# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED
Sep 25 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

R.W.,                                  )
                                       )
    Appellant-Defendant,          )
                                       )
        vs.                 )    No. 49A02-1112-JV-1187
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.           )

## APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Scott Stowers, Magistrate
Cause No. 49D09-1107-JD-1913

**September 25, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

R.W. appeals the true finding that he committed an act that would constitute the offense of Attempted Burglary,[1] a class B felony, if committed by an adult. On appeal, R.W. presents the following issue for review: Did the juvenile court err in admitting the taped statement of a custodial interrogation of R.W.?

We reverse and remand with instructions.

The facts favorable to the true finding are that on July 20, 2011, Nikole White heard a window break in the living room of her home. When she entered that room, she saw R.W. reaching through a broken window attempting to lift that window, presumably so he could enter the house. R.W. was a friend of White's son and had stayed at their house "a lot." *Transcript* at 5. White asked R.W., "Are you gonna break in my house now?" *Id*. at 6. R.W. fled from the scene. After R.W. left, White called the police and Indianapolis Metropolitan Police Department (IMPD) Officer Christopher Dickerson responded. He interviewed White, who related the details of the incident and identified R.W. as the intruder. She also provided the officer with R.W.'s address.

Officer Dickerson contacted IMPD Officer Seth Ferrell and asked him to locate R.W. Officer Ferrell traveled to R.W.'s residence and knocked on the door. R.W. answered the door out of breath and sweating. The officer asked R.W. if he knew why the officer was there and R.W. responded, "Yes." *Id*. at 26. Officer Ferrell contacted R.W.'s mother and then transported R.W. to a roll call location for an interview with police. R.W.'s mother soon

---

[1] Ind. Code Ann. § 35-41-5-1 (West, Westlaw through legislation effective May 31, 2012) (attempt); Ind. Code Ann. § 35-43-2-1 (West, Westlaw through legislation effective May 31, 2012) (burglary).

joined them. IMPD Detective Brice Adams talked to R.W. and his mother together. He read a waiver-of-rights form (waiver form) to them and separately asked each whether they understood the rights. They both indicated that they did. He then provided them with a copy of the waiver form and left the room for several minutes, allowing them to converse privately. When the officer returned, R.W. and his mother each signed the waiver form.

Because it is relevant to the issue under review, we will describe the waiver form with some particularity. The top half of the form constitutes an acknowledgement of the advisement of rights and the bottom half of the form constitutes the actual waiver of rights. On the top half, there is a line for the juvenile's signature and below that a line for a parent's signature. The bottom half of the form, pertaining to the actual waiver of rights, also has separate lines for the juvenile's and parent's signatures, and also has a line for a witness's signature. It appears that R.W. and his mother were either confused or misinformed about how the form should be completed. With respect to the top half, on the line marked "SIGNATURE", presumably referring to the juvenile's signature, R.W.'s mother printed her name. *The Exhibits* at 6. Below that, on the line marked PARENT'S SIGNATURE", R.W.'s mother signed her name. *Id*. The lower portion of the form stated, in relevant part: "I, with the consent of my parents, expressly waive the above rights and will answer any questions asked of me by the officer." *Id*. In the line denominated, "SIGNATURE", R.W. printed his name. *Id*. Below that, in the line denominated, "PARENT'S SIGNATURE", R.W. signed his name. *Id*.

In the ensuing recorded interview, R.W. admitted that he attempted to break into

3

White's house in order to steal X-box games. The State filed a delinquency petition in conjunction with this incident alleging that R.W. had committed acts that would constitute the offenses of burglary as a class B felony and criminal mischief as a class B misdemeanor if committed by an adult. Following a hearing, the juvenile court entered a true finding that R.W. had committed an act that would constitute the offense of attempted burglary if committed by an adult.

At the fact-finding hearing, the State sought to introduce R.W.'s statements made during the taped interview, including the confession described above. R.W. objected on grounds that he "was not asked individually [] as to each individual right if he actually understood the consequences of giving those up nor was his mother [] asked." *Id*. at 34. On appeal, R.W. challenges the admissibility of the confession, but on a different ground than he asserted at the hearing. On appeal, he claims the confession is inadmissible because the lower portion of the waiver form does not contain R.W.'s mother's signature, and, in view of the fact that there is no other evidence reflecting R.W.'s mother's waiver of R.W.'s rights, the evidence is insufficient to prove a knowing waiver on his mother's part.

Ind. Code Ann. § 31-32-5-1 (West, Westlaw through legislation effective May 31, 2012) codifies the protections afforded to juveniles with respect to the waiver of constitutional rights. For unemancipated minors such as R.W., it provides that the rights can be waived by a parent if "(A) that person knowingly and voluntarily waives the right; (B) that person has no interest adverse to the child; (C) meaningful consultation has occurred between that person and the child; and (D) the child knowingly and voluntarily joins with the

4

waiver[.]" I.C. § 31-32-5-1(2). The State bears the burden of proving beyond a reasonable doubt that the juvenile received all of the protections of this provision "and that both the juvenile and his or her parent knowingly, intelligently, and voluntarily waived the juvenile's rights[.]" *D.M. v. State*, 949 N.E.2d 327, 334 (Ind. 2011).

R.W. acknowledges that he objected to the admission of the confession on different grounds at trial than he does upon appeal. It is well-settled that a defendant may not raise one ground for objection at trial and argue a different ground on appeal. *Howard v. State,* 818 N.E.2d 469 (Ind. Ct. App. 2004), *trans. denied.* The failure to raise an issue at trial waives the issue on appeal. *Id.* Therefore, because R.W. did not object to the admission of the recorded statement on the grounds he now asserts on appeal, he has waived this issue for appellate review. *See id.*

R.W. attempts to circumvent waiver by arguing that the admission of the confession constituted fundamental error. *See Wilson v. State,* 931 N.E.2d 914 (Ind. Ct. App. 2010), *trans. denied.* "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State,* 849 N.E.2d 578, 587 (Ind. 2006). In other words, fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. *Mathews v. State,* 849 N.E.2d 578.

In the context of juvenile delinquency proceedings, our Supreme Court has stated that "[w]ritten waiver forms are not required to satisfy the constitutional demands of *Miranda* or

the statutory requirements of [I.C. §] 31–32–5–1, but they are particularly strong evidence."

*D.M. v. State*, 949 N.E.2d at 343. Moreover, when used, "they should be clear and unequivocal." *Id.* In the present case, only Mother signed the top half of the waiver form pertaining to the acknowledgment of the advisement of R.W.'s rights, but only R.W. signed the bottom half, which is the portion of the waiver form that conveys the actual waiver of the rights. Based upon the way the form was completed, one may speculate as to how it came to pass that only one signed the top half and only the other signed the bottom half. Such speculation, however, cannot cure the fatal flaw in the document, i.e., that R.W.'s mother's signature does not appear on the line denominated "PARENT'S SIGNATURE", signifying that Mother acceded to the waiver of R.W.'s constitutional rights. Thus, we must look elsewhere to find evidence that Mother consented to the waiver. Mother did not testify at the denial hearing. Detective Brice Adams, the IMPD officer who advised Mother and R.W. of his rights and presented them with the waiver form, and who conducted R.W.'s questioning, offered no testimony on the subject of Mother's consent to waiver. The videotape itself is similarly unhelpful. In short, we find no evidence indicating that Mother consented to the waiver of R.W.'s rights. Absent a valid waiver of rights, it was error to admit R.W.'s confession.

Having determined that the juvenile court erred in admitting the confession, we must now determine whether that error was fundamental. We note that statements obtained in violation of *Miranda* and erroneously admitted at trial or, in this case, a denial hearing, are subject to harmless error analysis. *See Morales v. State*, 749 N.E.2d 1260 (Ind. Ct. App.

6

2001). "The improper admission of evidence is harmless error when the conviction [or, in a juvenile case, true finding] is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction [or true finding]." *Id*. at 1267.

The court entered a true finding that R.W. committed acts that would constitute the offense of attempted burglary if committed by an adult. "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." I.C. § 35-41-5-1. "Burglary is the breaking and entering of the building or structure of another person with the intent to commit a specific felony therein." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). White testified that when she heard a living room window break in her house, she immediately went into the living room, where she saw R.W., whom she knew well, standing at the broken window and reaching through it "trying to lift it up." *Transcript* at 7. This evidence was sufficient to establish the elements of attempted breaking and entry. The evidence pertaining to the element of intent to commit a felony once inside the house, however, is problematic.

As our Supreme Court has observed,

"[b]urglars rarely announce their intentions at the moment of entry," [*Gilliam v. State,* 508 N.E.2d 1270, 1271 (Ind. 1987)], and indeed many times there is no one around to hear them even if they were to do so. Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering "may be inferred from the circumstances." *Id.*

*Baker v. State*, 968 N.E.2d at 229-30. In the present case, R.W.'s erroneously admitted

7

confession constituted the only evidence presented at the hearing concerning his intent upon entering White's home, i.e., that he intended to take X-box games. Except for the confession, the evidence does not permit any inference whatsoever with respect to what R.W. intended to do after entering White's home. The mere fact that R.W. broke a window and attempted to enter the home is not enough. *See*, *e.g.*, *Baker v. State*, 853 N.E.2d at 230 ("[p]ermitting the felonious intent element to be inferred from the inference of breaking and entering would render the intent element meaningless and read it out of the statute"). This compels the conclusion that the error in admitting the confession contributed to the true finding with respect to the attempted burglary allegation and therefore clearly is not harmless. Accordingly, we conclude that the trial court committed fundamental error in admitting R.W.'s videotaped confession and the true finding must be reversed.

This, however, does not end the matter. "Where the State cannot establish intent to commit a particular underlying felony, criminal trespass is the appropriate charge." *Id. Freshwater v. State*, 853 N.E.2d 941, 942 (Ind. 2006). In the present proceeding, in addition to the allegation of burglary, R.W. was also alleged to have committed acts that would constitute the crime of criminal mischief as a class B misdemeanor if committed by an adult. Following the fact-finding hearing, the court took the matter under advisement. When the court reconvened to rule upon the delinquency petition, it made the following comments:

> [s]um it up on whether or not the evidence on the record met the statutory definition of the act as charged, specifically Count 1 Burglary after the contemplation, I have concluded … there is sufficient evidence to support an attempt, which in an included offense. There will be a TRUE FINDING as to Count 1, the included offense of Attempted Burglary, a Class B Felony if committed by an adult. Count 2, Criminal Mischief, I think the evidence was

8

> supported but (inaudible) Count 1, um also supports Count 2; so noting there is evidence to support Count 2[,] under merger, I find a NOT TRUE finding as to Count 2.

*Transcript* at 56-57. The order relating to the court's determination concerning the criminal mischief allegation stated: "Count 2 – Criminal Mischief (I.C. 35-43-1-2MB), a Charge class B Misdemeanor; NOT TRUE, by reason of merger into count one." *Appellant's Appendix* at 49. The court's comments clearly reflect that it found the criminal-mischief allegation to be true but, presumably for double-jeopardy purposes, the juvenile court elected not to enter a true finding on that count, and instead "merged" the criminal mischief count with the burglary count.

In *Carter v. State,* 750 N.E.2d 778 (Ind. 2001), the defendant was found guilty of three alcohol-related driving offenses: Count 1, operating a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in one hundred (100) milliliters of the person's blood, a class C misdemeanor; Count 2, operating a vehicle while intoxicated, a class A misdemeanor; and Count 3, operating a vehicle while intoxicated with a previous conviction of operating while intoxicated within the five immediately preceding years, a class D felony. The verdicts on Counts 1 and 2 stemmed from a jury trial. After those verdicts were announced, the defendant waived his right to jury trial and Count 3 was tried by the bench. The court found the defendant guilty of Count 3. For double jeopardy reasons, the trial court entered judgment of conviction only upon Count 3.

Upon direct appeal, this court remanded with instructions to vacate what it referred to

9

as "convictions" on Counts 1 and 2.[2] *Carter v. State*, 734 N.E.2d 600, 605 (Ind. Ct. App. 2000) *vacated,* 750 N.E.2d 778. Our Supreme Court reversed the order to vacate the guilty verdicts on Counts 1 and 2, deeming it "unnecessary" to do so. *Carter v. State,* 750 N.E.2d at 778. Among other things, the Court noted that it may do more harm than good to vacate a jury verdict not reduced to judgment, especially if the greater offense is reversed "for reasons specific to the incremental elements between the greater and a lesser included offense." *Id.* at n.9. This, of course, refers to the prospect of reinstating the lesser offense upon reversal of the greater offense. In *Carter,* the Court specifically mentioned entering judgment upon a guilty verdict not reduced to judgment by the court, but in so doing indicated that even a vacated guilty verdict could be reinstated, citing *Taflinger v. State,* 698 N.E.2d 325 (Ind. Ct. App. 1998).

In *Taflinger,* the defendant was found guilty of attempted murder and neglect of a dependent. Citing double jeopardy concerns, the trial court entered judgment of conviction only on the attempted murder count. The State then moved to dismiss the neglect conviction rather than merge it with the attempted murder conviction. The trial court granted that motion. Later, this court reversed the attempted murder conviction on grounds of instructional error. Upon remand, there was no attempt to retry the defendant for attempted murder. Rather, the State filed an information charging the defendant with neglect of a dependent. Thereafter, the State filed a motion to reinstate the previously dismissed neglect

---

[2] In fact, the record in that case reflected that these were guilty verdicts rendered by the jury, but it appears judgment of conviction was not entered upon those verdicts.

conviction, which the trial court granted. The defendant appealed, contending "the trial court violated the prohibition against double jeopardy by imposing sentence on a verdict that had been previously dismissed." *Id.* at 326. This court identified the primary purpose of the Double Jeopardy Clause as addressing the threat of multiple prosecutions, i.e., to prevent multiple trials for the same allegedly criminal conduct. The court cited the following rationale from *United States v. Wilson,* 420 U.S. 332 (1975):

> The underlying idea ... is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Taflinger v. State,* 698 N.E.2d at 327–28 (quoting *State v. Monticello Developers, Inc.,* 527 N.E.2d 1111, 1112 (Ind. 1988)). This concern would not be implicated by the reinstatement of a verdict or conviction that was vacated because it was a lesser included offense and judgment of conviction was entered on the greater offense. Rather, the defendant was merely resentenced on a jury verdict that had been previously dismissed. The court explained:

> By reinstating the jury's verdict of guilty and sentencing [the defendant] accordingly, the trial court was not affording the State another opportunity to prove its case. The State had already convicted [the defendant] in a jury trial of neglect of a dependent child causing serious bodily injury. He was merely resentenced on a jury verdict that had been previously dismissed. Because [the defendant] was not threatened with nor subject to a reprosecution there was no double jeopardy bar.

*Id.* at 328.

We understand that juvenile proceedings are civil in nature and that an act of juvenile delinquency is not a crime. *See J.V. v. State*, 766 N.E.2d 412 (Ind. Ct. App. 2002).

11

Nevertheless, generally speaking, we see no reason to regard a true finding as fundamentally different from a guilty verdict for purposes of the principles discussed and summarized above in *Carter* and *Taflinger*.

In the present case, the juvenile court entered a "not true" finding with respect to the criminal mischief allegation under Count 2, but not upon the basis that it found the evidence supporting that allegation to be lacking in some regard. In fact, we think it mischaracterizes the juvenile court's finding on this count to focus simply upon the court's use of the phrase "not true" when ruling on that count. The court explicitly found the allegation of criminal mischief to be true in that the evidence established all of the elements thereof, but it explicitly "merged" that count with the burglary allegation and entered a true finding only upon the latter. Therefore, preferring substance over form, we interpret the juvenile court's comments and order as reflecting that the allegation of delinquency contained in Count 2 was established, but merged. We have vacated the true finding with respect to burglary upon our conclusion that the only element differentiating the two, i.e., the intent to commit a felony, was not supported by sufficient admissible evidence. As indicated, there was sufficient evidence to establish the remaining elements of burglary, which also constitute every element of the offense of criminal mischief. *See Freshwater v. State*, 853 N.E.2d 941. Therefore, consistent with the rationale espoused in *Carter* and *Taflinger*, as discussed above, we remand with instructions to reinstate the true finding on Count 2.

In summary, we conclude that the juvenile court committed fundamental error in admitting R.W.'s videotaped confession, which constituted the only evidence of the element

12

of intent to commit a felony with respect to the allegation of burglary under Count 1. Therefore, the true finding under Count 1 must be reversed. We affirm the juvenile court's finding that the State's evidence established the allegation in Count 2 that R.W. committed acts that would constitute the offense of criminal mischief. Further, because we reversed the true finding on Count 1, with which the finding in Count 2 was "merged", we remand with instructions to enter a true finding with respect to the merged Count 2.

Judgment reversed and remanded with instructions.

MAY, J., and BARNES, J., concur.