## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2018, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.L., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | July 31, 2018 <br><br> Court of Appeals Case No. 18A-JV-250 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Karen M. Love, Judge <br><br> Trial Court Cause No. 32D03-1712-JD-232 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following T.L.'s admission to an act that would have constituted battery with a deadly weapon, a Level 5 felony if committed by an adult, the juvenile court placed T.L. in the care of the Indiana Department of Correction ("DOC"). T.L. now appeals, raising two issues for our review: (1) whether the juvenile court committed reversible error when it decided T.L. would wear restraints during her combined admission and dispositional hearing, and (2) whether the juvenile court abused its discretion when it placed T.L. with the DOC. Finding no fundamental error in the fact that T.L. wore restraints during the combined hearing before the juvenile court and that the juvenile court acted within its discretion when it placed T.L. with the DOC, we affirm.

# Facts and Procedural History

[2] On November 27, 2017, fifteen-year-old T.L. went to a park in Danville to confront A.S. about a pair of T.L.'s shoes that T.L. felt A.S. wrongfully possessed. The two had been arguing previously, and T.L. came to the park armed with a pair of brass knuckles in her pocket. T.L. and A.S. became involved in a physical altercation. T.L. struck A.S. in the face with the brass knuckles, causing A.S. to seek treatment at the hospital for an injury above her left eye.

[3] On December 7, 2017, the State filed a petition alleging that T.L. was delinquent. The juvenile court issued an emergency detention order for T.L.,

finding that there was evidence that she was a threat to public safety because she had a history of battery, she had another battery case pending at the time, and because the instant offense involved the use of a deadly weapon.

[4] T.L. was detained on December 18, 2017, and remained in detention until her next hearing on January 8, 2018. T.L. was represented by counsel. At the beginning of the hearing, the juvenile court noted that T.L. wore restraints[1] "since this is a crime of violence and I haven't made a decision about what the outcome is going to be here." Transcript, Volume 2 at 18-19. T.L. did not object to wearing restraints.

[5] T.L.'s counsel acknowledged that it was unlikely that a residential facility would accept T.L. for treatment because T.L. had already had a residential placement and because her current adjudication was for a violent act. T.L. admitted that she had committed the acts alleged in the State's delinquency petition. T.L. explained that her father had counseled her not to fight A.S., but her friends had encouraged her to do so. T.L. had possessed the brass knuckles for a number of months before her encounter with A.S. T.L. knew that brass knuckles were potentially lethal but maintained that she had not intended to injure A.S.

[6] The juvenile court entered a true-finding, and the matter proceeded to disposition. The juvenile court noted that "the issue now is what – what is the

---

[1] The record does not disclose the nature of the restraints or how T.L. came to be restrained.

best and most appropriate, um, plan going forward in terms of how we – [T.L.] gets redirected." *Id*. at 31. Dwight Stevenson of the Hendricks County Probation Department, who had twenty-four years of experience, provided the following information at T.L.'s dispositional hearing. T.L. had been referred for her first battery adjudication in 2016. As part of the resolution of that case, the State dismissed a pending illegal consumption of an alcoholic beverage case, and T.L. was placed on probation. T.L. was released from that probation due to being found to be a child in need of services ("CHINS"). T.L. was placed in a residential treatment facility for six months during the CHINS case. After she completed residential treatment, T.L. admitted that she was still using illegal substances. T.L. had been suspended from school for fighting and had school attendance issues. T.L. was referred in September of 2017 for a battery adjudication. Stevenson had just met with T.L. regarding that matter when she committed the acts that formed the basis for the instant adjudication. It was Stevenson's opinion that T.L. would not comply with probation or home detention without electronic monitoring or some other form of direct supervision.

[7] Lee Anne Owens, who had been T.L.'s court appointed special advocate in the CHINS case, also appeared at the dispositional hearing and testified to the following. Cross Systems of Care was a service offered through probation that T.L. had not yet been through, but T.L. would not be a suitable candidate for probation without being on house arrest or home detention. T.L. would not stay at home if not supervised when her father was at work. T.L. required a

"drastic intervention" and required an "enormous" amount of supervision. *Id.* at 40, 42. T.L. had significant unaddressed mental health issues but had been known to resist treatment in the past. During Owens' testimony, T.L.'s counsel acknowledged that Hendricks County probation did not offer electronic monitoring. T.L.'s father confirmed that there was no one else in his home to supervise T.L. when he was at work during the day.

[8] At the conclusion of the dispositional hearing, the juvenile court found that probation could not devise a plan for T.L. to meet her needs. In its written dispositional order, the juvenile court noted T.L.'s previous contacts with the juvenile justice system, her poor school performance, her need for substance abuse counseling, and her inability to cope with anger and frustration. Appellant's Appendix, Volume II at 32-33. The juvenile court found that T.L.'s delinquent activity was accelerating and that she required a high level of supervision that she could not receive in the community. *Id.* at 33. The juvenile court found that without a structured and secure environment where T.L. could receive services to address her substance abuse, coping skills, anger management skills, and education, T.L. would continue to be a threat to public safety. *Id.* The juvenile court placed T.L. with the DOC for an indeterminate commitment. *Id.* at 34.

# Discussion and Decision

# I. Use of Restraints

T.L. contends that we should reverse the juvenile court's dispositional order because she wore restraints during the combined admission and dispositional hearing. As an initial matter, we note that T.L. did not object to wearing restraints at the hearing. As a general rule, issues raised for the first time on appeal are waived for our review. *See In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (holding that an allegation of a due process violation raised for the first time on appeal was waived). T.L. acknowledges the import of her failure to object to wearing restraints, and she urges us to examine this issue for fundamental error. *See* Appellant's Brief at 8-9. "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *R.W. v. State*, 975 N.E.2d 407, 411 (Ind. Ct. App. 2012) (examining the concept of fundamental error in a delinquency proceeding) (citation omitted), *trans. denied*. Fundamental error is defined as an error so prejudicial to the rights of a juvenile that a fair hearing is rendered impossible. *Id*.

The use of restraints in a juvenile proceeding is addressed in Indiana Code section 31-30.5-2-1(a), which provides that

> a juvenile shall not be restrained in court unless the court has determined on the record, after considering the recommendation of the sheriff or transport officer, that the juvenile is dangerous or potentially dangerous.

Thus, in order to justify placing or maintaining a juvenile in restraints, the juvenile court must consider any recommendations from the authority transporting the juvenile to court and make a determination on the record that the juvenile is dangerous or potentially dangerous. In this case, there is nothing in the record that indicates that a recommendation for restraint by the transporting authority was made to, or considered by, the juvenile court, and the juvenile court did not make any determinations on the record that T.L. was dangerous or potentially dangerous.

[11] However, we cannot conclude that T.L. was deprived of a fair hearing by the juvenile court's failure to observe the procedure required by statute. A primary concern about having a defendant in a criminal trial appear in shackles or restraints before a jury is that it may dilute the presumption of innocence or cause the jury to base its verdict on extraneous factors. *Ritchie v. State*, 875 N.E.2d 706, 718 (Ind. 2007). That concern is not implicated where, as here, a juvenile elects to admit to delinquency allegations before the juvenile court judge, who is presumed to be impartial. *See Garland v. State*, 788 N.E.2d 425, 433 (Ind. 2003) ("The law presumes that a judge is unbiased and unprejudiced"). In addition, T.L. does not argue that there was a nexus between her admission to the delinquency allegations and the fact that she wore restraints at her admission and dispositional hearing. Although the statutes do not permit, and we do not condone, the prophylactic use of restraints in a juvenile delinquency proceeding, we find that T.L.'s substantial rights were not

substantially impacted, and, thus, we will not disturb the juvenile court's delinquency order.

## II. Least Restrictive Placement

[12] T.L. also argues that the juvenile court abused its discretion when it placed her with the DOC because other less-restrictive options existed. *See* Appellant's Br. at 10-12. "The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the discretion of the juvenile court and we will reverse a dispositional order only if there has been an abuse of that discretion." *D.C. v. State*, 935 N.E.2d 290, 292 (Ind. Ct. App. 2010), *aff'd on trans.*, 958 N.E.2d 757 (Ind. 2011).

[13] Indiana Code section 31-37-18-6 provides the following:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[14] Therefore, although the statute generally requires that the juvenile court choose the least restrictive placement available, it only requires the least restrictive placement that is consistent with the safety of the community and the best interests of the juvenile. In some instances, a more restrictive placement is appropriate in light of those considerations. *J.S. v. State*, 881 N.E.2d 26, 28-29 (Ind. Ct. App. 2008).

[15] T.L. argues that the juvenile court abused its discretion because it rejected the possibility of probation and informal home detention for her and assumed that the DOC was the only option. *See* Appellant's Br. at 11-12. However, by the time of the instant matter, T.L. was fifteen years old and had already received probation for another battery true-finding in 2016. T.L. had also had six months of treatment in a residential facility. Despite having had the benefit of those services, T.L. had two additional contacts in quick succession with the juvenile justice system for battery. Indeed, T.L. had just met with Stevenson regarding one battery matter when she committed the act which resulted in her current adjudication, which was for an act that would have been battery with a deadly weapon if committed by an adult. Thus, not only had T.L. failed to redirect her behavior through probation and residential treatment, but the seriousness of her violence was escalating.

In addition, T.L. had been suspended from school for fighting, she had school attendance issues, she continued to abuse substances, and she had unaddressed mental health and impulse control issues. Stevenson and Owens both indicated that T.L. could only succeed on probation and home detention if she were intensively supervised. However, Hendricks County did not provide electronic monitoring, and T.L.'s father worked during the day, leaving no one in the home to monitor T.L. as intensively as she required. Therefore, contrary to T.L.'s assertion on appeal, the juvenile court had more than an "unsubstantiated belief" that probation and home detention were not a possibility for T.L. *See* Appellant's Br. at 11. In addition, T.L.'s argument that the juvenile court should have considered residential treatment as a less restrictive placement, *see id.* at 12, is inconsistent with her counsel's acknowledgment at the hearing that such a placement was unlikely. Given that, even after having received probation and residential treatment in the past, T.L.'s pattern of violence had continued and escalated, the lack of options for supervision in the community, and that T.L. continued to require services, the juvenile court did not abuse its discretion when it concluded that DOC was the most appropriate placement option for T.L.

# Conclusion

Concluding that T.L.'s substantial rights were not prejudiced by the wearing of restraints at her combined admission and dispositional hearing and that the juvenile court did not abuse its discretion by ordering T.L. committed to the

DOC rather than to a less restrictive placement, we affirm the juvenile court's dispositional order.

[18] Affirmed.

Najam, J., and Altice, J., concur.