## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 16 2019, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew Michaloski
Deputy Attorney General and

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

S.C.,

*Appellant- Respondent,*

v.

State of Indiana,

*Appellee- Petitioner.*

April 16, 2019

Court of Appeals Case No.
18A-JV-1971

Appeal from the Marion Superior
Court

The Honorable Marilyn A.
Moores, Judge

Trial Court Cause No.
49D09-1707-JD-1019
49D09-1806-JD-756

**Tavitas, Judge.**

## Case Summary

S.C., a minor, appeals her placement at the Department of Correction ("DOC") after her adjudication as a delinquent for an act that would be considered intimidation if committed by an adult, a Class A misdemeanor, and after the juvenile court found that she violated her probation on a separate case. We reverse and remand.

## Issues

S.C. makes two arguments on appeal regarding her sentence to the DOC. We, however, reframe the issue before us as whether the record is adequate for this court's review.

## Facts

Before we summarize the facts as evidenced by the record, we pause to note that the record before us, especially the juvenile court transcripts, fall short with regard to clarity and detail. This court was able to put together a set of facts only after a laborious review of the record, piecing together information from the CCS, the parties' agreements, pleadings, and the minimal information in the transcript. Accordingly, we outline below the facts we located, and more importantly, the information we could not ascertain.

From what we can ascertain from the record, S.C. is a fifteen-year-old female who has had several interactions with the juvenile court. On July 25, 2017, S.C. was alleged to be a delinquent child for committing an act that would be considered automobile theft if committed by an adult, a Level 6 felony, under

Cause No. 49D09-1707-JD-1019 (the "auto theft offense"). S.C.'s mother claimed that S.C. ran away and stole her vehicle. S.C. was later alleged to have "violated the supervision conditions of unsupervised community adjustment," when she left her foster placement without permission on October 11, 2017. Appellant's App. Vol. II p. 200. Evidently, at a disposition hearing on November 16, 2017, S.C. entered an admission agreement whereby S.C. admitted to committing the auto theft offense and all other pending charges were dismissed in exchange for formal probation.[1]

[5] Also evident in the record is that S.C. had several mental and psychological issues. On December 12, 2017, S.C. was diagnosed with: "Disruptive Mood Dysregulation, Conduct Disorder, [] Specific Learning Disorder, and PTSD." Appellant's App. Vol. III p. 51. On February 1, 2018, S.C. tested positive for marijuana. S.C.'s cognitive assessment also yielded results of "extremely low" or "relatively low" scores under the Psychological Evaluation of the Wechsler Abbreviated Scale of Intelligence. *Id.* at 61.

[6] On January 26, 2018, S.C. was alleged to have, again, run away from her foster placement (the "runaway offense"). After, an incident in another placement several months later, on May 3, 2018, S.C. was alleged to have committed an act that would be considered intimidation if committed by an adult, a Class A misdemeanor, in Allen County under Cause No. 49D09-1806-JD-756 (the

---

[1] Based on the record, it appears S.C. had another allegation of an act that would be considered automobile theft if committed by an adult, a Level 6 felony.

"intimidation offense"). On May 16, 2018, S.C. admitted to committing the intimidation offense in the Allen County juvenile court. Subsequently, the parties agreed to venue the intimidation offense to Marion County. As a result, the intimidation offense was considered as its own separate offense, and as a basis for, in conjunction with the runaway offense for the State's petition to modify probation in the auto theft offense ("probation modification"). The runaway offense is the "first probation violation" and the intimidation offense is the "second probation violation" for purposes of this appeal.

[7] On June 15, 2018, the juvenile court held a hearing in Marion County on the parties' admission agreement as to S.C.'s probation violation (the "agreement"). The State and S.C. entered into an agreement, requiring that S.C. admit to the first probation violation, and in exchange, the State would move to dismiss S.C.'s second probation violation. The State agreed to recommend continued probation. At the hearing, S.C. admitted the factual basis for the first probation violation. The juvenile court set disposition for July 20, 2018, and seemingly took the agreement under advisement.

[8] We believe the juvenile court took the agreement under advisement because of the court's order following the June 15, 2018, hearing. At the hearing, however, there is no indication from the juvenile court that it took the agreement under advisement, as the transcript is devoid of any statement from the juvenile court indicating as much. The juvenile court concluded the hearing with: "Well here, let's set a modification on the delinquency matter. Dual Status Review for the CHINS matter." Tr. p. 15.

[9]     Contained in the juvenile court's order dated June 15, 2018, on the admission agreement, the juvenile court found:

> A. The Court ascertains that the child fully understands the constitutional right and consequences of the Admission and the admission agreement, and that no threats or promises have been made to the child to have the agreement accepted. The child is advised that the Court is not bound by any recommendation made by the State and may reject the admission agreement but that if the admission is accepted by the Court, the Court must follow the terms of the admission agreement. The Court does take a factual basis for the admission.
>
> B. The Court takes the State's admission agreement under advisement and refers the matter to the Probation Department for investigation, recommendation and predisposition.

Appellant's App. Vol. III p. 47.

[10]    S.C. encountered several issues with her placements, as apparent from the record. While several of those problems arose from S.C.'s conduct, it also appears that the system generally did not provide S.C. with the support she needed including appropriate placement. At S.C.'s admission agreement hearing on June 15, 2018, S.C. stated: "Y'all keep sending me to these different placements and you think it is helping me but it is not. I just want somebody to care and love me." Tr. p. 14.

[11]    In S.C.'s July 18, 2018, pre-dispositional report, a list was provided of "placements contacted in DCS' efforts to secure placement:"

1. IUMCH- denied due to elopement risk

2. Southwest Indiana Youth Villages- unable to take her due to behaviors

3. Courage Center- denied due to behaviors and aggression; previously took her as a 1 day favor to DCS

4. Options – too aggressive for acute unit given how she was discharged

5. Lutherwood- awaiting response for temporary placement [ ]

6. [S.C.'s grandmother]- no longer an appropriate placement option

7. Whites residential: too aggressive behaviors

8. Benchmark: [S.C.] will need somewhere secure due to behaviors

9. Gibault: currently no openings

10. Oaklawn- no openings for females

11. Bashor Children's Home currently full waitlist

12. Campagna Academy; no openings until late summer

13. Crossroad Child and Family Services: denied due to behaviors

14. Midwest Center for Youth and Families-no openings currently

15. Gateway Woods Family Services: no openings

16. Childplace: [S.C.] is too combative in nature

17. Boystown: denied due to behaviors

18. Capstone Academy: issues with licensing

19. Cumberland Residential Placement: -too aggressive

20. Eau Claire Academy: placed on waitlist

21. Wernle: too violent for facility

22. Campagna: denied placement due to her aggressive behavior

23. Columbus Behavioral: denied placement due to her aggressive behavior

24. Transitions: denied placement due to her aggressive behavior

25. Valle Vista: denied placement due to her aggressive behavior

26. Youth Service Bureau of Jay County: denied placement due to her aggressive behavior

27. YOC. Denied placement due to her aggressive behaviors

At this time, youth has been accepted by Youth Villages in Tennessee. Youth is reportedly first on the waiting list. However, it should still be another month before an opening is available.

Appellant's App. Vol. II p. 139 (punctuation in original).[2]

[12] On July 20, 2018, the juvenile court held a hearing regarding the intimidation offense and the probation modification. At the hearing, the juvenile court started the discussion on what appeared to be the intimidation offense separately, stating:

THE COURT: We are also set for disposition. State[,] what about that?

---

[2] This court finds it concerning that no adequate placement for S.C. could be determined. This is especially worrisome in light of the fact that both S.C.'s parents are incarcerated, and other family members appear not to be an option, despite what those family members are communicating to S.C. At the June 15, 2018, hearing, DCS stated:

[The aunt] stated to me that she does not want to take in [S.C.] at this time. She will be a support system for her. She works from 9 to 2 and 2:30 to 10, she also has an eighteen-year-old son and a seven-year-old daughter, so she is not willing – well she wants to work with [S.C.], she doesn't – she is afraid that [S.C.] will run and not listen to her directions and the rules of her home. I also spoke with [S.C.'s] mother and father who are both incarcerated and her mother had stated that if we release – well if the court was to release [S.C.] to her Aunt who has marijuana in the home and allows her son to do whatever he wants to do, we can release her back to her grandmother, who is also using marijuana.

Tr. p. 13. S.C. was placed with the grandmother on more than one occasion. *See* Appellant's App. Vol. III p. 31.

[THE STATE]: State would ask to continue that til [sic] pending the new case.

THE COURT: Uh no.

[THE STATE]: Okay well the State is in agreement with probation's recommendations for DOC.

THE COURT: Anything else from probation?

PROBATION: Not at this time.

THE COURT: Counsel?

[S.C.'S COUNSEL]: Judge[,] we are asking that the Court send that case back to the county that it came from [Allen County]. My client was not properly given effective assistance of counsel, no attorney here would have ever admitted her open and allow[ed] her to make an open admission that would allow here [sic] to be committed to the Department of Correction. She was not properly informed, she was sitting in a court room where her attorney told her to say yes and that is what she did. . . . With respect to the modification that we admitted to the petition to modify that we are also set for [] continued probation, so I don't know how we jump from continued probation to DOC. At our last hearing, we made an admission to a [petition to modify] for continued probation and I don't know how all of the facts were known to the State at the time, about that out of county dispo[sition] and they agreed to continued probation so I don't know how we could then jump to saying that DOC is the least restrictive alternative and the best interest of this child so based on that we would ask the Court not to proceed to disposition, to send it back to the county that it came from where she can have adequate representation, at this time.

Tr. pp. 17-18. The parties continued to debate the best placement for S.C. The juvenile court then abruptly stated:

> [S.C.,] I am going to commit you to the Department of Correction for placement in Girls School. I am going to rescind authorization for filing of the most recent JD matter. I am going to disapprove – I am going to rescind that.
>
> * * * * *
>
> That is 831 and I am not ordering TRP. I am going to recommend a term of six months and order that you continue with individual counseling and whatever vocational services DCS describes in the best interest and includes education and counseling. Alright. Thank you very much.

*Id.* at 22.

[13]    As discussed above, the parties' June 15, 2018, agreement regarding the probation modification meant S.C. would admit to the first probation violation, and the State would dismiss the second probation violation. Pursuant to this agreement, the State was supposed to recommend continued probation. Again, although the juvenile court did not state at the June 2018 hearing that it would take the agreement under advisement, we are able to determine from the juvenile court's order dated June 15, 2018, that, after the hearing, the juvenile court took the agreement under advisement. No where in the record, however, points to whether the juvenile court ultimately accepted that agreement.

[14] There are factors that lead us to conclude that the juvenile court did accept the agreement, including that a hearing was not held on the probation violation that led to the agreement. Furthermore, the juvenile court's dispositional order on the modification petition indicates that the first probation violation was the basis for the juvenile court's dispositional order on the modification petition. The second probation violation was not included as a basis for revoking probation on the juvenile court's dispositional order on the modification petition, which was consistent with the parties' agreement to dismiss the second probation violation, and to use the first probation violation as the basis for S.C.'s probation modification.

[15] Still, we are not certain and are speculating about the trial court's intentions. Whether the juvenile court accepted the agreement is an important fact, especially in light of S.C.'s argument that "the juvenile court accepted the admission agreement in its written order and the CCS[,]" and accordingly, the juvenile court was "bound by the terms of that agreement." Appellant's Br. p. 19 (internal citations omitted).

[16] Moreover, the State did not recommend probation at the disposition hearing as required pursuant to the agreement, which compounds the confusion of this Court. Pursuant to the agreement, the State agreed to recommend continued probation as a disposition for the probation modification. At the admission agreement hearing on June 15, 2018, the terms of the agreement were discussed, including continued probation for S.C. as described by S.C.'s attorney. At the July 18, 2018, hearing, the State's attorney declared: "the State

is in agreement with probation's recommendations for DOC." Tr. p. 17. While we believe this statement was with regard to S.C.'s disposition in the intimidation offense separately, it seems odd to us that at the dispositional hearings for the intimidation offense and the probation modification, the State only made a recommendation as to the intimidation offense, and that recommendation was the DOC in both cases. Both the State and the juvenile court appeared to forget about the agreement at the dispositional hearing.

[17]  At the July 20, 2018, hearing, the juvenile court entered a dispositional decree ordering S.C. to the DOC, but did not address the probation modification on the record. At the end of the dispositional hearing, the juvenile court simply declared that it would be granting wardship of S.C. to the DOC. The record, however, is unclear regarding whether that statement was in reference to the intimidation offense separately, or the probation modification. The juvenile court's orders also included the same language on both orders, granting wardship of S.C. to the DOC. In other words, the juvenile court appears to have entered disposition as to the probation modification, without actually discussing the underlying claims of the modification petition at the hearing and without discussing the agreement between the State and S.C. with regard to the probation modification. S.C. now appeals.

## Analysis

[18]  S.C. argues that the juvenile court erred in granting wardship to the DOC both in the intimidation offense and the probation modification. We are unable to answer these questions due to an incomplete record, and we must remand to

the trial court to produce a clear and complete record with regard to S.C.'s disposition on the modification petition.

[19] Specifically, we are unable to ascertain whether the juvenile court accepted the agreement. *See, e.g. L.W. v. State,* 798 N.E.2d 904, 907 (Ind. Ct. App. 2003) (finding a fact finding hearing was not conducted and was unnecessary only after the child and the State entered into a plea agreement). While we could speculate, we decline to do so. We are unable to piece together the series of events that occurred at the trial court, and we should not be required to do so. *See In re Involuntary Termination of Parent-Child Relationship of N.G.,* 61 N.E.3d 1263, 1266 (Ind. Ct. App. 2016) ("As we are not at liberty to scour the record to find evidence to support the judgment, we remand with instructions . . .").

[20] Moreover, because we are unable to even understand portions of the procedural decisions in S.C.'s disposition, we are unable to conclusively say there was not fundamental error in failing to address the agreement at S.C.'s disposition. *See R.W. v. State,* 975 N.E.2d 407, 411 (Ind. Ct. App. 2012) ("The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process") (citations omitted), *trans. denied.*

[21] We, therefore, reverse and remand to the juvenile court to generate a clear record, specifically with regard to its acceptance or denial of the agreement related to the probation modification. *See Carter v. State,* 686 N.E.2d 1254, 1263

(Ind. 1997) (remanding for a new sentence "[b]ecause it [was] unclear which statute the court applied"); *see also Manley v. Zoeller,* 77 N.E.3d 1227, 1231 (Ind. Ct. App. 2017) (ordering the lower court to "clarify its striking of the July 21 order of dismissal" after the record was unclear on why certain information was struck from the record); *see also Ray v. State,* 466 N.E.2d 1389, 1389 (Ind. Ct. App. 1984) (finding the record in the case unclear as to the issue of laches before the court, and accordingly, remanding the matter for a hearing on the issue). Furthermore, if the agreement is rejected, S.C. is entitled to a hearing on the probation modification. *See In re M.T.,* 928 N.E.2d 266, 271 (Ind. Ct. App. 2010) ("While the statute does not explicitly define the type of hearing required, basic due process principles and case law precedent lead us to conclude a trial court may not modify a juvenile's disposition without a hearing at which the State presents evidence supporting the allegations listed in the revocation petition"), *trans. denied.*

## Conclusion

We reverse and remand to the juvenile court to provide clarity in the record with regard to S.C.'s dispositions because we cannot adequately determine relevant information pertinent to S.C.'s appeal. Accordingly, the juvenile court shall hold hearings consistent with this opinion. We reverse and remand.

Reversed and remanded.

Baker, J., and May, J., concur.